| | |
|---|---|
| COREY SENAT and ASHANTI LUCAS | UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA |
| Plaintiffs, | Miami Division |
| vs. | CASE NO.: 2021-CV-61366-BB |
| MIAMI AUTO MAX, INC., et al. | **DEFENDANT'S MOTION FOR SANCTIONS AGAINST PLAINTIFFS AND JOSHUA FEYGIN** |
| Defendants. | |
| _____/ | |

The Defendant, MIAMI AUTO MAX, INC., moves for sanctions and to tax fees against the Plaintiffs and their lawyer, Joshua Feygin, for his improper Motion for Clerk's Default and his refusal to agree to Vacate the Clerk Default entered on 6/8/21, and states:

1. This case was filed by the Plaintiffs on 2/11/21 in Broward Count Circuit Court. The suit that on or about 2/4/19, they bought a used 2018 Chevy Malibu at Defendant's dealership and then learned that it had previously been a lease/rental car owned by Enterprise, and that some mechanic told them that it had previously been in an accident. Despite signing a disclosure that the Vehicle had previously been a leased vehicle (which they acknowledge in the complaint and attach as Exhibit C, Plaintiff s' suit alleges that these facts support a claim for violation of the Federal Odometer Act 49 USC §32701, and also brings claims for FDUPTA, §501.201 fraud and negligent misrepresentation against Miami Auto Max, and for some reason also its President/Owner, Ms. Quesada.

2. On 5/5/21, while this case was in State Court, Plaintiff's had the summons and complaint in this action, as well as a <u>second</u> unrelated action, served on the Defendant's bookkeeper at its Homestead location. The other action, is <u>Hanes v. Miami Auto Max, et al.</u>, Miami Dade Cir. Case No. 21-10758-23-ND02.

3. On May 24th the undersigned wrote to Plaintiff's counsel Joshua Feygin:

> I understand that you have filed suit and may have served Miami Auto Max, though it appears that service may or may not be valid as the process was left in the office on May 5th without service on the registered agent or

> any officer or director. In any case, we hereby request a 15-day extension of time to respond to the complaint.

See email attached as Exhibit 1.

3. Mr. Feygin wrote back that he would only agree to a 10 day extension. Id. But even though he knew the undersigned represented Miami Auto Max, in the Hanes, case, AND also knew that the undersigned was representing Miami Auto *Max in this matter* in pre-suit negotiations as late as February 2020, (see email attached as Exhibit 2) he inexplicably and frankly, unprofessionally, failed to advise the undersigned that he had filed a second suit - the subject one, and had that one served on the same bookkeeper on the same day at the same time.

4. Defendant only learned of the filing of the lawsuit because the undersigned did a case search on 6/10/21 which revealed that Mr. Feygin had also filed this suit, served Miami Auto Max's bookkeeper on 5/5 and filed a Motion for Default. The docket sheet only showed the filing of the motion, and not that the Clerk had actually entered the Default, at the time. The Undersigned filed a Motion for Extension on 6/10 hoping the motion would precede any default. A Copy of the Motions for Extension is attached hereto as Exhibits 3.

5. However, after filing the motion, the undersigned again reviewed the docket, but this time clicked on the Motion for Default and opening the document, the undersigned saw that Clerk *had* entered the Default on 6/8. That same day, (6/10) the undersigned filed a Motion to Vacate the Default; filed less than 48 hours after the entry of the Default. A Copy of the Motion to Vacate the Default filed with the Circuit Court is attached hereto as Exhibits 4.

6. As set forth in the Motion to Vacate and supporting Affidavits, Mr. Feygin's gamesmanship and intentional omissions, Miami Auto Max's president was only aware of the Hanes case, as the summons and complaint in this case, were simply attached to the process in the Hanes case, both of which were served on the bookkeeper for Defendant and which was placed on top to the process in this case, and placed in the in-box for its President, Kennya Quesada.

7. Then, Mr. Feygin misrepresented to the Clerk that he had not received *any* paper from the Defendant. This was a total and blatant falsehood, - he had the email from the undersigned noted above, and was a violation of Feygin's ethical obligations under the Rules Regulating the Florida Bar.

8. On 6/21, Defendant filed Affidavits in support of the Motion to Vacate and a Motion to Dismiss demonstrating meritorious defenses and excusable neglect. A copy of the Notice of Filing Affidavits in the Circuit Court is attached hereto as Exhibit 5. A Copy of the Motion to Dismiss is attached as Exhibit 6.

9. Despite the foregoing, on 6/11, Mr. Feygin refused to vacate the Default. See email attached as Exhibit 7.

10. One could have excused this as an honest error except for the fact that Mr. Feygin refused to agree to vacate the default, even after Defendant filed a Motion to Vacate less than 48 hours after the entry of the Default, and even after the filing of the affidavits demonstrating excusable neglect and meritorious defenses.

11. Instead, Mr. Feygin engaged in an effort to avoid the hearing occurring on the date HE SELECTED, see Exhibit 8, and argued some preposterous claim that the Defendant used car dealership should Defendant should have had some system in place to avoid any error when it is served with two complaints at the same time- an error that Mr. Feygin could have rectified by having the common courtesy of mentioning the second suit. A copies of Plaintiff's Motion to Continue Hearing is attached as Exhibit 9.

12. On 6/29/21, the Circuit Court, Judge Marvin Bidwill, properly denied the Motion to Continue the Hearing and Granted the Defendant's Motion to Vacate the Default. A copy of that Order is attached as Exhibit 10.

13. On 7/2, Defendant filed a Motion for Sanctions in the Circuit Court for the reasons

stated herein. A copy is attached hereto as Exhibit 11. Later that same day, this Case was removed by the Co-Defendant to this Court under Federal Question jurisdiction.

14. The Defendant has incurred over $3,000 in legal fees to have the default vacated (not counting the time for motions for sanctions).

15. This Motion and Memo of Law are filed in accordance with the Court's Order of 7/2/2 and Local Rule 7.2. This Court has the inherent authority to award sanctions and should tax Defendants fees against the Plaintiffs and their counsel for the reasons stated herein.

## Memorandum of Law

**A.    The Default in the Circuit Court was Improper; Plaintiffs Should have Agreed to Vacate It.**

Rule 1.500 (a), Fla. R. Civ. P., similar to the corresponding Federal rule, prohibits the entry of a default by the clerk against a party who has served any paper, and a default should be vacated under 1.500(a) or 1.540(b) when a party has served a paper and a default is improvidently entered. *Kroier v. Kroier*, 95 Fla. 865, 116 So.753 (1928), was a case where the clerk improperly entered a default judgment against a defendant who had appeared in the action. This court held that a default judgment entered without legal authority, in violation of the law, was void. *Id*. at 95 Fla. at 874.

Furthermore, a void judgment can be set aside and stricken from the record on motion or collaterally attacked at any time. *Id*. at 877. Here, the service itself was invalid as a matter of law.

Even if the "paper" i.e., the email provided to Mr. Feygin was not a qualifying paper, under Rule 1.540(b) provides for vacating a default under the circumstances herein, where there are meritorious defense, the defendant has acted with due diligence and the default was entered due to excusable neglect. As the Circuit Court noted at the 6/29/21 hearing vacating the default, there is overwhelming authority that defaults should be liberally set aside in these circumstances. Florida courts have a liberal policy of vacating defaults so that cases can be decided on the merits. *See N. Shore Hosp., Inc. v. Barber,* 143 So.2d 849, 853 (Fla.1962); *Gibson Trust, Inc. v. Office of the Atty.*

4

*Gen*., 883 So.2d 379 (Fla. 4th DCA. 2004).

In *Somero v. Hendry General Hospital,* 467 So.2d 1103 (Fla. 4th DCA 1985), we stated: [W]here inaction results from clerical or secretarial error, *reasonable misunderstanding,* a system gone awry or any other of the foibles to which human nature is heir, then upon timely application accompanied by a reasonable and credible explanation the matter should be permitted to be heard on the merits. It is a gross abuse of discretion for the trial court to rule otherwise. *Id.* at 1106 (emphasis supplied). a meritorious defense may be shown by an unverified pleading or an affidavit. *See Gibraltar Serv. Corp. v. Lone & Assocs., Inc.,* 488 So.2d 582, 584 (Fla. 4th DCA 1986).

Although the Motion to Vacate was decided under the Florida Rules of Civil Procedure and case law, the same standard is applicable in the 11th Circuit.

"The court may set aside an entry of default for good cause . . . ." Fed. R. Civ. P. 55(c). The "good cause" standard is a liberal and flexible one. *Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996). In determining whether a defendant has satisfied the good-cause standard, courts consider a variety of factors, such as: whether the default was culpable or willful; whether setting aside the default would cause prejudice to the opposing party; whether the defaulting party has a meritorious defense; whether the public interest is implicated; whether the defaulting party has suffered significant financial loss; and whether the defaulting party promptly acted to correct the default. *Id*,

The Eleventh Circuit recognizes a strong policy of determining cases on their merits and defaults are viewed with disfavor. *In re Worldwide Web Systems, Inc*., 328 F.3d 1291, 1295 (11th Cir. 2003) (citations omitted).To obtain relief under Rule 60(b), a party must demonstrate a meritorious defense. The Court has stated that "with respect to a meritorious defense, [l]ikelihood of success is not the measure" rather, "the movant need only provide a hint of a suggestion that her case has merit." *Griffin IT Media, Inc. v. Intelligentz Corp*., No. 07-80535-CIV, 2008 WL 162754,

at *3 (S.D. Fla. Jan. 16, 2008) (internal citations and quotation marks omitted).Under Rule 60(b)(1), "excusable neglect is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence." Cheney v. Anchor Glass Container Corp., 71 F.3d 848, 850 (11th Cir. 1996) (quoting Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380, 394 (1993)). "The [Supreme] Court [has] concluded that whether a party's neglect of a deadline may be excused is an equitable decision turning on 'all relevant circumstances surrounding the party's omission.'" Id. (quoting *Pioneer Investment*, 507 U.S. at 395). "The factors we must weigh include 'the danger of prejudice to the [opposing party], the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" Id. (quoting *Pioneer Investment*, 507 U.S. at 395).

Thus, the Default was improper and opposing counsel should have agreed to vacate it.

**B.        The Court has the Inherent Power to sanction Plaintiffs and their Lawyer**

The Court has the inherent power to sanction Plaintiffs and their lawyer, not merely to punish Feygin - though that would certainly be warranted - but to make the Defendant whole for their improper conduct.

A court may sanction an attorney pursuant to its "inherent power" to police behavior that undermines the judiciary's ability to achieve the just, orderly, and expeditious disposition of cases. See *Chambers v. NASCO*, Inc., 501 U.S. 32, 43 (1991). "The inherent power 'is both broader and narrower than other means of imposing sanctions.'" *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010) (quoting *Chambers*, 501 U.S. at 46). It is broader in the sense that, "[w]hile other sanction mechanisms only reach certain individuals or conduct, 'the inherent power extends to a full range of litigation abuses' and 'must continue to exist to fill in the interstices.'" Id. (quoting *Chambers*, 501 U.S. at 46). "Indeed, the inherent power of a court can be invoked even if procedural rules exist

6

which sanction the same conduct, for these rules are not substitutes for the inherent power." Id. (quoting *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995) (internal quotation marks omitted)).

In *Moakley v. Smallwood*, 826 So.2d 221 (Fla.2002) the Court ruled it had inherent authority to sanction attorneys under its prior ruling in *Bitterman v. Bitterman*, 714 So. 2d 356, 365 (Fla. 1998). Moakley recognized that the Florida inequitable conduct doctrine, as stated in *Bitterman*, was modeled upon the same federal doctrine which authorized imposition of sanctions for acts of an attorney or party committed "in bad faith, vexatiously, wantonly, or for oppressive reasons."

The *Moakley* Court, however, narrowed its holding for imposition of sanctions to only acts committed in bad faith. Federal authorities interpreting courts' inherent and statutory authority to impose sanctions for bad faith or vexatious conduct holds the determination of the propriety of sanctions requires an objective analysis of the attorney's conduct. See *Sanchez v. Sanchez*, 435 So.2d 347 (Fla. 3d DCA 1983)(wife's attorney who wasted judicial effort in failing to allow correction of admitted numerical error in judgment ordered to pay husband's attorney's fees). See also Rosenberg v. Gaballa, 1 So.3d 1149, 1150 (Fla. 4th DCA 2009). The Court is required to make an express finding of bad faith conduct, nor the detailed factual findings describing specific acts of bad faith conduct that resulted in the plaintiff's unnecessary incurrence of attorneys' fees. *Rivero v. Meister*, 46 So.3d 1161(Fla. 4th DCA 2010).

At the same time, the inherent power is narrower in the sense that a finding of bad faith is required to impose such sanctions. *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998). Ordinarily, a court should not impose sanctions pursuant to its inherent authority if Rule 11 would suffice. See Fed. R. Civ. P. 11, Adv. Cmt. Note, 1993 amend. "But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power" to sanction misconduct. Chambers, 501 U.S. at 50. "The key to unlocking a court's inherent power is a finding of bad faith." Barnes, 158 F.3d at 1214.

In this context, "'[a] finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order.'" Id. (quoting *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997)). The Eleventh Circuit has held that "the inherent powers standard is a subjective bad-faith standard." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017). Importantly however, the court clarified that absent direct evidence of subjective bad faith, this standard can also be met if an attorney's conduct is "tantamount to bad faith," meaning the "attorney's conduct is so egregious that it could only be committed in bad faith." Id. at 1224–25 (citing *Roadway Exp.*, 447 U.S. at 767).

An attorney's conduct is "tantamount to bad faith" if he "recklessly raises a frivolous argument." Id. at 1225 (quoting *Barnes*, 158 F.3d at 1214). "Recklessness alone does not satisfy the inherent powers standard," but "recklessness plus a frivolous argument suffice." Id. The Eleventh Circuit has offered additional guidance to lower courts in considering whether to invoke their inherent power to impose sanctions: If a district court is unsure whether to sanction a party under its inherent powers, it should look to the guidance of the Supreme Court in *Chambers*. The purpose of the inherent power is both to vindicate judicial authority without resorting to contempt of court sanctions and to make the non-violating party whole. See *Chambers*, 501 U.S. at 45– 46.

Plaintiffs, and their counsel, in order to get the default, misrepresented to the Court's clerk that no paper was served.  And by refusing to agree to vacate the default, despite the motion to vacate being flied less than 48 hours after its entry, and despite the filing of affidavits and a motion to dismiss demonstrating excusable neglect and meritorious defenses, Plaintiffs and Mr. Feygin caused Defendant to incur unnecessary attorney's fees and acted in bad faith.

Under both Federal and Florida law, the Plaintiffs should have agreed to vacate the Default

and the Court has the inherent authority to sanction them for their failure to do so.

WHEREFORE Defendant moves to tax fees and costs as sanctions against the Plaintiffs and their attorney, Mr/ Feygin.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been emailed to: **Joshua Feygin**, **Esq.**; Joshua Feygin**, PLLC, 1800 E. Hallandale Beach Blvd.; Ste #85293, Hallandale Beach, FL 33009 (josh@jfeyginesq.com); and **Darren Newhart, Esq**. (Darren@NewhartLegal.com) Newhart Legal, PA, 14611 Southern Blvd, Ste 1351, Loxahatchee, FL 33470, and **Rachel B. Cash, Esq**.; Burr & Forman LLP,  420 N. 20th St., Suite 3400, Birmingham, Alabama 35203 (Email: rcash@burr.com) on July 8, 2021.

                          **THE PIVNIK LAW FIRM**
                          7700 N. Kendall Drive., Suite 703
                          Miami, FL  33156
                          Ph: (305) 670-0095
                          Pivniklaw@aol.com
                          JPivniklaw@Pivniklaw.com

                          By:   **S/Jerome A. Pivnik**
                                Jerome A. Pivnik, Esq.
                                Fla. Bar No.:  400408